UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KRIS ALBRIGHT,

        Plaintiff,

        v.                         Case No. 19-C-1341

C.R. BARD INC. and
BARD PERIPHERAL VASCULAR INC.,

        Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF GURVAN BLACKMAN, M.D., AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kris Albright brought this action in the United States District Court for the District of Arizona as part of ongoing multidistrict litigation against Defendants Bard Peripheral Vascular Inc. and C.R. Bard Inc. for damages Plaintiff claims to have suffered as a result of complications she experienced with a Bard Meridian® inferior vena cava filter manufactured and sold by Defendants. The case was transferred to this Court on September 13, 2019. This matter comes before the Court on (1) Defendants' motion for summary judgment as to Plaintiff's product liability and punitive damages claims and (2) Defendants' motion to exclude the opinions and testimony of Gurvan Blackman, M.D. based on his failure to comply with the disclosure requirements of Federal Rule of Civil Procedure 26. For the reasons that follow, Defendants' motion to exclude Dr. Blackman's opinions and testimony will be granted. And because Plaintiff's claims cannot be established without expert testimony on causation, the Court also grants Defendants' motion for summary judgment.

## BACKGROUND

Bard manufactures and sells a filter, known as the Meridian Filter. The filter is conical in shape and consists of a main shaft to which twelve struts (six "arms" and six "legs") are attached.



Dkt. No. 30 at 4. Once the filter is implanted into the inferior vena cava (IVC), the largest vein in the human body, its arms and legs open and anchor the filter in the walls of the IVC. IVC filters, such as the Meridian Filter, are often used in patients who have had prior episodes of deep venous thrombosis or blood clots and to address the risk of potentially life-threatening pulmonary emboli.

On April 18, 2012, Dr. Thomas Chua placed a Bard Meridian Filter in Plaintiff, prior to a bariatric lap band surgery and gallbladder removal, because she had morbid obesity and a history of deep venous thrombosis and needed protection against the risk of future pulmonary emboli. IVC filters can be placed in a patient temporarily or permanently. Dr. Chua and Plaintiff agreed that the filter would be implanted for permanent use. Nearly four years later, on March 25, 2016, Plaintiff was hospitalized for retroperitoneal bleeding in her back and extensive venous thrombosis (clotting). Plaintiff was treated for her extensive clotting and was later discharged. Prior to March 2016, no physician checked on the status of Plaintiff's filter and no physician told her anything about the status of the filter. After her hospitalization in 2016, Plaintiff experienced three instances of blood clots in her legs despite being on anticoagulation. On September 4, 2019, Plaintiff underwent a successful percutaneous retrieval of her filter by Dr. Aaron Bos.

Plaintiff claims that the filter occluded her IVC, restricted her blood flow, and caused blood clots and internal bleeding. She asserts that she suffers from long-term chronic venous disease

2

and will require long-term anticoagulant therapy and routine follow-up with CT scans. Plaintiff

seeks damages for risk of future injury and punitive damages.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence

and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson*

*v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four*

*Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for

summary judgment must "submit evidentiary materials that set forth specific facts showing that

there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)

(citations omitted). "The nonmoving party must do more than simply show that there is some

metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against

a party "who fails to make a showing to establish the existence of an element essential to the party's

case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885

F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Plaintiff has designated Gurvan Blackman, M.D., an interventional radiologist, as a case-

specific expert to offer opinions "regarding causation of [Plaintiff's] injuries, as well as probable

prognosis." Dkt. No. 31-7 at 10. Defendants assert that Dr. Blackman's opinions should be

excluded due to his failure to comply with Rule 26(a)'s disclosure requirements. Federal Rule of

Civil Procedure 26 requires that a retained expert witness provide a written report that contains:

> (i) a complete statement of all opinions the witness will express and the basis and
> reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). "The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) (citation omitted). To ensure compliance with Rule 26's disclosure requirements, Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

While the Seventh Circuit has held that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless," it has recognized that "the determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (internal quotation marks, citations, and alterations omitted). The court has set forth several factors to guide the district court's exercise of discretion. These factors include "(1) the prejudice or surprise to the party against whom the evidence is offered; (2)

4

the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* (citation omitted).

Dr. Blackman provided an expert report that includes his qualifications, his opinions, and a list of his reliance materials. Dkt. No. 31-7. Defendants assert that Dr. Blackman's opinions should be excluded for failing to provide Defendants with a full disclosure of the studies and documents he considered in forming his opinions. In particular, Defendants assert that Dr. Blackman's report violates Rule 26's disclosure requirements because he relied on sources, medical literature, and scientific studies not contained in his reliance list, such as several articles and studies to support his future care testimony, the written expert report of John LaDisa, Jr., Ph.D., and the Instructions for Use for the Meridian Filter. To date, Dr. Blackman has not disclosed this information to Defendants. Plaintiff asserts that, even if the failure to include a reference to these studies and documents in his reliance list violated Rule 26, it does not prejudice Defendants and at most casts doubt upon Dr. Blackman's testimony. Although Dr. Blackman complied with certain sections of Rule 26, the Court concludes that Dr. Blackman's failure to disclose the sources he considered in forming his opinions was not substantially justified or harmless. For the reasons explained below, Dr. Blackman's opinions will be excluded.

First, as to Plaintiff's future medical treatment and care, Dr. Blackman opines that Plaintiff will "require future endovascular intervention, that may include, but are not limited to, pharmacomechanical thrombolysis, venoplasty and restenting of the iliocaval system." *Id.* at 15. He explains, "Studies show that venous stenting in the setting of chronic venous disease, demonstrate patency between 80–100% in the first year, and continues to drop to approximately 60% at year 5." *Id.* Dr. Blackman has not identified the articles or studies he reviewed in forming

5

his opinion. Although Plaintiff maintains that Dr. Blackman's opinions are based on his review of the available records, education and experience, and review of the pertinent literature, it appears this portion of his opinions is based primarily on these undisclosed studies. *Id.*; *see also* Dkt. No. 32-2 at 79–83. Without identifying which studies he relied upon or any other basis for his opinion, Defendants' experts did not have the benefit of the basis of Dr. Blackman's opinions in developing their own opinions and Defendants could not effectively prepare an informed line of questioning to assess Dr. Blackman's opinions. Therefore, the Court finds that Defendants are prejudiced by Dr. Blackman's failure to disclose the studies.

Dr. Blackman also stated in his report that he has read the report written by John F. LaDisa, Jr., Ph.D., in *Lampton v. C.R. Bard* and "agree[s] with the report and the bases for the opinions regarding the thrombogenic potential of the Meridian Filter set forth therein." Dkt. No. 31-7 at 7. Although Dr. LaDisa submitted his opinion in *Lampton v. Bard*, Defendants' counsel was not counsel for Bard in that case, and Plaintiff has not provided Defendants with Dr. LaDisa's report. Defendants assert that they are prejudiced by this failure to disclose because Dr. LaDisa's report is central to Dr. Blackman's causation opinions. Plaintiff asserts that nothing in Rule 26(a)(2) "prohibits the inclusion of an undisclosed expert report as a source." Dkt. No. 35 at 5. But the disclosure of "facts or data" as required by the rule is to be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26 Advisory Committee's Notes (2010 Amendments). Dr. LaDisa's report certainly contained the "factual ingredients" on which Dr. Blackman based his conclusion and thus should have been disclosed to Defendants. Dr. Blackman conceded at his deposition that, without Dr. LaDisa's report, Defendants could not question him about the validity of the statements upon which Dr. Blackman relied to form his opinions. Dkt. No. 32-2 at 44. Defendants

6

are harmed by Dr. Blackman's failure to provide Dr. LaDisa's report because they are prevented from completely understanding the basis of Dr. Blackman's opinions and preparing a defense.

In addition, although he did not include it in his reliance list, Dr. Blackman indicated at his deposition that he relied on an Instructions for Use (IFU) for the Meridian Filter to form the basis of his opinions about the IFU's deficiency. Defendants assert that there are nine versions of the Meridian IFU and that Dr. Blackman has not provided Defendants with any indication as to which version he relied upon in forming his opinions. Defendants argue that, as a result, they were required to question Dr. Blackman about a version of the IFU that he may not have used, which could result in a surprise at trial. Dr. Blackman's failure to disclose which version of the IFU he considered is unacceptable under the dictates of Rule 26. Dr. Blackman also testified that "it's possible" that sources for his background for the Bard Meridian IVC Filter section of his report are not contained in his reliance list. Dkt. No. 32-2 at 41. Dr. Blackman has not identified the additional sources that he may have relied upon to support the background section of his report.

Plaintiff's numerous violations of Rule 26(a) were neither substantially justified nor harmless under Rule 37(c). Plaintiff does nothing to justify the failure to disclose the information relied upon by Dr. Blackman or explain why her failure to do so was harmless. Nor does she offer any explanation for why she never supplemented her disclosures. Defendants are prejudiced by Plaintiff's violations and that prejudice cannot be cured because discovery in this case has closed. Reopening discovery would prejudice Defendants because it would cause additional delay in the case and require that Defendants prepare new motions on potentially different grounds. *See Hassebrock v, Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016). Therefore, the Court imposes the sanction of excluding Dr. Blackman's report and testimony. *Salgado*, 150 F.3d at 742 (noting that

the district court is "not required to fire a warning shot" prior to excluding expert testimony based on a Rule 26 violation).

To establish liability under Wisconsin law, a plaintiff must establish that the defendant's product was defective and that the defective condition of the product was a cause of the plaintiff's injuries. Wis. Stat. § 895.047(1)(e). "[T]he lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inference to draw." *Bruss v. Milwaukee Sporting Goods Co.*, 34 Wis. 2d 688, 696, 150 N.W.2d 337, 341 (1967). This case requires expert medical testimony to establish causation between Plaintiff's injury and Defendants' medical device. Without Dr. Blackman as a witness, Plaintiff lacks the evidence of causation necessary to support her claims. *See Fuesting v. Zimmer, Inc.*, 362 F. App'x 560, 564 (7th Cir. 2010). Accordingly, Defendants are entitled to summary judgment because Plaintiff has failed to make a sufficient showing on an essential element of her case. *See Celotex*, 477 U.S. at 323.

While this result may seem harsh, it is worth noting that even if Dr. Blackman's testimony was not excluded, the result would be the same. As the following discussion shows, Dr. Blackman's opinions, even if admitted, do not provide an evidentiary basis upon which a reasonable jury could conclude that the Meridian filter specifically caused Plaintiff's injuries.

In Wisconsin, the alleged "cause" must be a "substantial factor" in producing the plaintiff's injury. *Clark v. Leisure Vehicles, Inc.*, 96 Wis. 2d 607, 617, 292 N.W.2d 630, 635 (1980). The phrase "substantial factor," denotes that the alleged cause "has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in

8

the popular sense." *Id.* at 617–18. Here, Plaintiff seeks to rely on Dr. Blackman to prove specific causation, but Dr. Blackman's opinions are insufficient for several reasons.

First, Dr. Blackman's opinion that "the two tiered, conical design of the Meridian IVC filter in combination with the barbs or caudal anchors" provided the means for thrombus formation, and thus, in turn, "caused [Plaintiff] to develop significant iliocaval thrombus at the Meridian IVC filter" is inadequately supported. Dkt. No. 31-7 at 14. Dr. Blackman includes no citation for either statement, and the source he does reference for that conclusion, both earlier in his report and during his deposition, merely states that caudal anchors are "capable" of causing injury and irritation to the IVC wall and that the presence of anchors merely "increases the risk" of causing thrombus to develop. *Id.* at 7; *see also* Dkt. No. 32-2 at 47. This may be appropriate to establish a showing of general causation, but it falls short of the type of evidence needed to allow a reasonable jury to conclude that the filter *specifically* caused Plaintiff's injuries.

Furthermore, Dr. Blackman admitted during his deposition that there is no other medical literature that points to caudal anchors being the source of endothelial damage or disruption of hemodynamic flow, such that it would induce thrombus formation. Dkt. No. 32-2 at 74. While Dr. Blackman opined that there was literature indicating that Bard's past conical shaped filters were prone to penetration of the IVC, he admitted that he had discovered no such literature specifically discussing the Meridian filter. *Id.* at 73. In short, Dr. Blackman has not provided sufficient scientific evidence to prove that the Meridian filter, or its features, specifically caused Plaintiff's injuries. Citing a single report, notably one that was produced in response to litigation, for the proposition that caudal anchors are "capable" of causing damage to the IVC is not sufficient for a reasonable jury to conclude that the Meridian filter was a substantial factor in causing Plaintiff's injury.

Similarly, Dr. Blackman's differential etiology fails to provide an adequate basis upon which a reasonable jury could conclude that the Meridian filter was a substantial factor in producing Plaintiff's injury. In a differential etiology, "the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). But Dr. Blackman's differential etiology provides no analysis as to how he reached his conclusions, nor do the answers he gave in his deposition assuage concerns that he adequately considered obvious possible alternative causes. Dr. Blackman makes quick work of the etiology, noting that he

> considered possible causes for the severe occlusive thrombosis that Ms. Albright suffered in March of 2016 other than the Meridian IVC filter and there is no indication that Ms. Albright suffered any significant trauma or major abdominal surgery following placement [of] the IVC filter and completion of her bariatric procedure prior to the thrombotic event in March of 2016. Ms. Albright does not have any congenital anomalies of the IVC that would predispose her to thrombus.

Dkt. No. 31-7 at 14. Dr. Blackman further opined that the Meridian filter was properly placed, and thus, improper placement could not have been the cause. *Id.* at 13. But Dr. Blackman provides no explanation in his report as to why he ruled out other potential causes of the blood clots. Instead, he merely states that he "considered" the possible causes and then summarily rules them out.

Furthermore, Dr. Blackman's report fails to adequately account for obvious possible alternative causes. Defs.' Proposed Findings of Fact ¶¶ 9, 23, Dkt. No. 31. In his deposition, Dr. Blackman was asked if Plaintiff's morbid obesity, sedentary lifestyle, and family history of blood clotting could have increased her risk of blood clotting. In response, Dr. Blackman testified that each of those factors "increase risk" of clotting. Dkt. No. 32-2 at 86. Notably, this is the same language that Dr. Blackman used in his report when describing the potential impact of the caudal anchors; he merely indicated that the anchors may "increase[] the risk" of causing thrombus to

develop. Dkt. No. 31-7 at 7. It is fatal, then, that Dr. Blackman failed to explain why he rejected these possible alternative causes. Plaintiff asserts that Dr. Blackman *did* take into account these possible causes, Dkt. No. 35 at 16, but the only evidence that Plaintiff points to is the same portion of the deposition in which Dr. Blackman freely admits that morbid obesity, a sedentary lifestyle, and certain aspects of a family history of clotting increase the risk of blood clotting. Simply mentioning them as other possible causes, however, does not explain why they were ruled out. Without an adequate explanation from Dr. Blackman either in his report or at his deposition, no reasonable jury could conclude that it was more likely than not that the Meridian filter specifically caused Plaintiff's injuries.

In sum, the Court concludes that, even if Dr. Blackman's testimony was not excluded, Plaintiff has failed to make an adequate showing of causation. Dr. Blackman's report, although in some ways sufficient for general causation, fails to provide evidence that would allow a reasonable jury to conclude that it was more likely than not that the Meridian filter specifically caused Plaintiff's injuries. Indeed, given the myriad of potential causes openly acknowledged, yet summarily dismissed, by Dr. Blackman, any finding of causation by a trier of fact would be "in the realm of speculation and conjecture." *Merco Distributing Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978). Therefore, the Court concludes that no reasonable jury could find for Plaintiff on the issue of causation, and Plaintiff's case must be dismissed.

## CONCLUSION

For these reasons, Defendants' motion to exclude the opinions and testimony of Gurvan Blackman, M.D. (Dkt. No. 32) is **GRANTED** based on Dr. Blackman's failure to comply with Rule 26(a)'s disclosure requirements. Because Plaintiff's claims cannot be established without

11

Case 1:19-cv-01341-WCG   Filed 09/29/21   Page 11 of 12   Document 48

expert testimony on causation, Defendants' motion for summary judgment (Dkt. No. 30) is **GRANTED**. Defendants' motion to strike Dr. Blackman's generic non-case-specific opinions (Dkt. No. 33) is **DENIED as moot**, and the parties' motions to restrict (Dkt. Nos. 29, 34, 37, & 44) are **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

    **SO ORDERED** at Green Bay, Wisconsin this 28th day of September, 2021.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
